UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| MICHAEL B. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:22-cv-00011-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KENTUCKY JUSTICE AND PUBLIC | ) | **&** |
| SAFETY CABINET, DEPARTMENT OF | ) | **ORDER** |
| POLICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on multiple Motions to Dismiss. Plaintiff Michael Webb commenced this action following his permanent reassignment from Commander of the Kentucky State Police's Recruitment Branch to the Inspections and Evaluations Branch. Defendants La Tasha Buckner, Crystal Staley, Phillip Burnett, Jr., Billy Gregory, Mary C. Noble, David Trimble, Shawna Kincer, and the Department of State Police have all moved to dismiss Mr. Webb's various claims. [R. 24; R. 25; R. 26.] For the reasons that follow, the Motions to Dismiss will be **GRANTED**.

**I**

This case begins on a day filled with its own amount of contentiousness—January 6, 2021.[1] Captain Michael Webb, then a Commander of the Recruitment Branch for the Kentucky State Police, had decided to accompany his wife and daughter on a trip to Washington, D.C. [2]

---

[1] These facts reflect those alleged in Mr. Webb's Original Complaint. [*See* R. 1.]
[2] Mr. Webb's Original Complaint states that he arrived in Washington D.C. on January 6, 2020. [R. 1 at ¶ 25.] The Court surmises, given context, that the correct date is actually January 6, 2021.

Upon arriving in the District of Columbia, Mr. Webb and his family began a site-seeing tour that included some of our nation's greatest landmarks—the Washington Monument, the Lincoln Memorial, and the Vietnam War Memorial.  Shortly after departing Washington that same afternoon, Mr. Webb received a cellular alert notifying him of a city-wide curfew due to unrest.

Two days later, on January 8, 2021, Mr. Webb was summoned to a meeting with the Acting Kentucky State Police Commissioner, Colonel Phillip Burnett; Kentucky State Police General Counsel, Shawna Kincer; and fellow-trooper, Major David Trimble.  Colonel Burnett explained to Mr. Webb that an "issue" had arisen relating to Mr. Webb's presence in Washington, D.C. on January 6.  Apparently, Mr. Webb's wife's social media had been circulated among multiple state government entities, including the Kentucky State Police, conveying Mr. Webb's presence "at the rally."  Colonel Burnett informed Mr. Webb that there was going to be an administrative inquiry into any possible violations of Department policy or of criminal law.  Colonel Burnett also informed Mr. Webb that Mr. Webb was being temporarily reassigned to the Property Management Branch until the conclusion of the inquiry.  Before the meeting ended, Mr. Webb averred that neither he nor his family had any involvement in any inappropriate activity and that they did not go to the Capitol on January 6.

Almost a month later, on February 5, Mr. Webb was informed that a formal investigation had been initiated regarding his attendance at the January 6 unrest, and that he was being permanently reassigned to a position at the Investigations Branch.  Around that same time, Mr. Webb's identity became public through news stories reporting on his reassignment that resulted from his attending the "D.C. Trump Rally."  On February 24, Mr. Webb received a memorandum from the Commander of the Internal Affairs Branch stating that the Internal Affairs Branch had completed its inquiry into the complaint filed against Mr. Webb.  The

2

memorandum informed Mr. Webb that there was no evidence to indicate he had violated any Kentucky State Police standards of conduct, and that the case would be closed.

Throughout this time, Mr. Webb alleges, the Kentucky State Police issued, and continued to issue, multiple press releases stating that Mr. Webb was at the D.C. rally but did not enter the Capitol.  This occurred despite Mr. Webb's repeated admonitions to his commanders, Major Trimble, Colonel Burnett, and the other Defendants, that Mr. Webb did not attend the rally, but was instead site-seeing in Washington, D.C.  Mr. Webb pleads that, as a consequence, he has "undergone a nervous breakdown, had to undergo psychological counseling and treatment, has suffered post-traumatic stress, depression, anxiety, and has been placed on medical leave as a result of the stress associated with the untruthful statements made about him, the unwarranted investigation into his personal life and time, and the demotions to a dungeon of duty."

Mr. Webb subsequently commenced this action in Federal District Court asserting a number of claims against defendants La Tasha Buckner, Crystal Staley, Phillip Burnett, Jr., Billy Gregory, Mary C. Noble, David Trimble, and Shawna Kincer in their official and individual capacities, and the Department of State Police and unknown members of the Executive Branch. Mr. Webb invokes this Court's jurisdiction via a claim under 42 U.S.C. § 1983, alleging that each of the defendants violated his constitutional rights to travel, intimate association, and due process.[3]  Mr. Webb's additional claims are all state law claims sounding in tort.  Now before the Court are multiple motions to dismiss, each of which asserts similar and overlapping arguments. [*See* R. 24; R. 25; R. 26.]

---

[3] Mr. Webb clarified in his Amended Complaint which constitutional rights were allegedly violated.  [*See* R. 23.]

3

## II

## A

The Court will consider first the defendants' argument that Mr. Webb's case should be summarily dismissed for failure to effectuate service in a timely manner.  [*See* R. 24; R. 25; R. 26.]   Rule 4(m) of the Federal Rules of Civil Procedure requires that defendants be served "within ninety (90) days after the complaint is filed."  Fed. R. Civ. P. 4(m).  Here, Mr. Webb filed his original complaint on February 7, 2022.  [*See* R. 1.]  Every party, including Mr. Webb himself, agrees that Mr. Webb did not serve any of the defendants within 90 days.[4]

In this situation, Rule 4(m) directs District Courts to engage in a two-part analysis.  "First, the court must determine whether the plaintiff has shown good cause for the failure to effect service.  If he has, then 'the court shall extend the time for service for an appropriate period.'  Fed. R. Civ. P. 4(m).  Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time.  *See id*.  In other words, the court has discretion to permit late service even absent a showing of good cause."  *Stewart v. Tennessee Valley Authority*, 238 F.3d 424 (6th Cir. 2006).  Thus, "an extension of time is mandatory if good cause is shown, but it is discretionary if good cause is not demonstrated."  *Turner v. Ky. Transp. Cabinet*, Civil Action No. 3: 10-39-DCR, 2010 U.S. Dist. LEXIS 128557 at *10 (E.D. Ky. Dec. 3, 2010).  The plaintiff bears the burden of showing good cause.  *Hatton v. Nationwide Mut. Ins. Co*., Case No. 5:19-cv-020-JMH, 2019 U.S. Dist. LEXIS 118627 at *6 (E.D. Ky. July 17, 2019) (citations omitted).

"Good cause is not defined in Rule 4(m), but the Sixth Circuit has required 'at least excusable neglect.'"  *Id*. (citing *Stewart*, 238 F.3d 424) (cleaned up).  "The excusable neglect

---

[4] It appears that the Defendants were eventually served on or about May 19, 2022, which is 102 days after Mr. Webb's Complaint was filed.  [*See* R. 8-1 at 6; R. 25 at 5.]

standard is strict and can only be met in extraordinary circumstances." *Id.* (citing *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005)).

Absent a showing of good cause, the Court still maintains discretion on whether to permit late service. Courts in this District have relied on several factors to consider in this decision, specifically:

> (1) whether a significant extension of time was required; (2) whether an extension of time would prejudice the defendant other than the inherent 'prejudice' in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether a dismissal without prejudice would substantially prejudice the plaintiff . . . and (5) whether the plaintiff had made any good faith efforts at effecting proper service of process.

*Id.*; *See also Kinney v. Lexington-Fayette Urban Cty. Gov't*, No. 5:12-cv-360-KKC, 2013 U.S. Dist. LEXIS 108020 at *9 (E.D. Ky. Aug. 1, 2013).

Here, the Court does not find that Mr. Webb has demonstrated good cause as to why he failed to effectuate service within 90 days. Mr. Webb's counsel avers that the failure to serve process within the time permitted was due to a misunderstanding by his paralegal. [R. 27 at 6-7; R. 27-1.] Apparently, the paralegal in question did not understand that it was incumbent on Mr. Webb or his counsel, not the Clerk of Court, to serve the defendants with a summons and a copy of the Complaint. [R. 27-1.] Rule 4(c) makes clear, however, that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ." Fed. R. Civ. P. 4(c). "Ignorance of the rules or mistakes in construing the rules do not usually constitute excusable neglect." *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006) (citation omitted). The Court will not deem counsel's failure to sufficiently monitor the status of this matter excusable neglect amounting to good cause. Thus, because good cause is absent, whether to permit late service is purely within the Court's discretion.

Despite the absence of good cause, the Court is reluctant to punish Mr. Webb because of his counsel's mistake.  Moreover, in weighing the factors that guide the Court's discretion, there appears to be little prejudicial effect on the defendants who were served.  Mr. Webb explains that counsel, upon learning of the mistake, immediately began effectuating service via traditional mail.  [R. 27 at 7.]  It appears that service was then received shortly thereafter by Defendants Buckner, Staley, Burnett, Gregory, Trimble, Noble[5], and the Department of State Police.  [*See* R. 8-1 at 6; R. 25 at 5.]  Thus, no significant time extension was required, and there is little prejudice to the defendants besides the "inherent" prejudice of having to defend the suit.  And given their original motions to dismiss, it appears that the defendants who were eventually served all had notice of the lawsuit.  [*See* R. 5; R. 8; and R. 9.]  Finally, the relevant statutes of limitations for Mr. Webb's claims mean that dismissing this matter on Rule 4 grounds might likely cause Mr. Webb great prejudice.[6]  For these reasons, the Court, exercising its discretion, will forgive Mr. Webb's process of service beyond 90 days as to defendants Buckner, Staley, Burnett, Gregory, Trimble, Noble, and the Department of State Police.

As a housekeeping matter, the Court will address Mr. Webb's claims against Kentucky State Police General Counsel Shawna Kincer—it appears that there is some confusion as to whether or not Ms. Kincer is meant to be a party to this action.  In his original complaint, Mr. Webb identified Ms. Kincer as a defendant [R. 1 at ¶ 16], even though he failed to include Ms.

---

[5] It is not clear from her briefing whether Mary Noble did or did not eventually receive service or process.  [*See* R. 26-1 at 4-5.]  Given her appearance here, the Court will proceed with the assumption that Ms. Noble was served.

[6] At least four of Mr. Webb's claims are subject to a one-year statute of limitations.  *See Collard v. Ky. Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)."); *Ferry v. Cabinet for Health and Family Services*, No. 3:17-cv-00525-TBR, 2018 U.S. Dist. LEXIS at *9-10 (W.D. Ky. Feb. 2, 2018) (finding that a one-year statute of limitations applies to claims for violation of the Kentucky Constitution); *ISP Chemicals, LLC v. Dutchland, Inc*., No. 5:08-cv-153-TBR, 2011 U.S. Dist. LEXIS 72815 at *16 (W.D. Ky. July 6, 2011) (explaining that the relevant statute of limitations for vicarious liability is dependent on the statute of limitations for the underlying claim); Ky. Rev. Stat. Ann. § 413.140(1)(d) (West, 2024) (an action for libel shall be commenced within one year after the cause of action accrued).

Kincer's name in the caption.  [*See* R. 1 at 1-2.]  According to Ms. Kincer, no summons was ever issued as to her, and she was never served.  [R. 25 at 6.]  Moreover, the Court surmises from Mr. Webb's response that Ms. Kincer is not meant to be a party to this action.  [*See* R. 27 at 3-4.] Accordingly, the Court will not extend the timeframe in which to serve Ms. Kincer and will summarily dismiss her from this matter.

**B**

The Court turns next to Mr. Webb's federal § 1983 claim.  The moving defendants raise an abundance of challenges as to why dismissing Mr. Webb's § 1983 action is warranted— failure to state a claim pursuant to Rule 12(b)(6), sovereign immunity[7], qualified immunity, and expiration of the relevant statute of limitations.  The Court first considers whether Mr. Webb has stated a plausible § 1983 claim.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of cause of action will not do."  *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences."  *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).  The complaint must enable a court to draw a "reasonable inference

---

[7] In his response to defendants' motions, Mr. Webb appears to concede that his § 1983 claim against any defendants in their official capacities are barred by the Eleventh Amendment and state sovereign immunity.  [*See* R. 27 at 11.] Mr. Webb further concedes that his §1983 claim against the Kentucky State Police is barred.  *Id*. at 12.

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).  The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

42 U.S.C § 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States . . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir.1993).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  There appears to be no dispute in this case that the individual defendants were acting as state officials when they undertook the allegedly unlawful actions.  Accordingly, the primary question here is whether Mr. Webb's complaint plausibly alleges that the defendants committed a constitutional violation.

**1**

The first constitutional right that Mr. Webb alleges the defendants violated is his fundamental right to travel.  [R. 23 at 2.]  Although "[t]he word 'travel' is not found in the text of the Constitution. . . . the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (citing *United States v. Guest*, 383 U.S. 745, 757 (1966)).  The Supreme Court has identified three components of the

right to travel: (1) the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens in that State. *Id*. at 500.

According to Mr. Webb, his complaint "certainly sets out . . . a *prima facie* case that his constitutional right to travel has been violated . . . ." [R. 27 at 14.] Upon review of Mr. Webb's complaint, however, the Court disagrees. It appears that Mr. Webb's complaint implicates only the first component of the right to travel, the right of a citizen of one State to enter and to leave another State. Even so, Mr. Webb's factual allegations, taken as true, fail to allege that he was proscribed from travelling between states. Indeed, Mr. Webb's facts indicate the exact opposite—he was freely able to drive from Kentucky to Washington, D.C., and back, with no issue. Although the Court might ascertain that Mr. Webb feels as though he was punished for travelling to our nation's capital, his constitutional right to travel, under the Supreme Court's framework, was not infringed upon under this factual scenario. For that reason, Mr. Webb's § 1983 theory alleging a violation of his constitutional right to travel fails.

**2**

The Court next considers Mr. Webb's allegation that the defendants violated his First Amendment right to freely associate. Mr. Webb argues, more specifically, that he has provided enough facts to support a claim that the defendants violated his right to "intimate association." [R. 27 at 16.] "The Constitution protects two distinct types of association: freedom of expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment." *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 301

9

(6th Cir. 2023) (quoting *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004)).  The

right to intimate association protects "choices to enter into and maintain certain intimate human

relationships against undue intrusion by the State."  *Id.* (quoting *Roberts v. U.S. Jaycees*, 468

U.S. 609, 617-18 (1984)).  The Supreme Court has described the right to intimate association to

include "those that attend the creation and sustenance of a family—marriage; childbirth; the

raising and education of children; and cohabitation with one's relatives."  *Jaycees*, 468 U.S. at

619 (citations omitted).  "The kinds of personal associations entitled to constitutional protection

are characterized by 'relative smallness, a high degree of selectivity in decisions to begin and

maintain the affiliation, and seclusion from others in critical aspects of the relationship.'"

*Anderson*, 371 F.3d at 881 (quoting *Jaycees*, 468 U.S. at 620).

    In his responsive briefing, Mr. Webb explains (or alleges, rather) that the actions taken

against him were related to his relationship with his wife, who had posted pictures of herself at or

near the Washington, D.C. rally on January 6, 2021.  [R. 27 at 16.]  Mr. Webb claims that his

marriage to, and accompaniment to Washington, D.C. with, his wife was the basis for the actions

taken against him by the defendants.  *Id.* at 16-17.  "Essentially, [Mr. Webb] was deemed by the

defendants to be guilty by association and such actions constitute a violation of his constitutional

right to the freedom of association with his wife."  *Id.* at 17.  Thus, it appears that Mr. Webb

wants his complaint to be construed as a First Amendment retaliation claim.  To state a claim

that he was retaliated against for expressing his First Amendment right to intimate association,

Mr. Webb must allege that (1) he engaged in protected conduct; (2) an adverse action was taken

against him that would deter a person of ordinary firmness from continuing to engage in that

conduct; and (3) the adverse action was motivated at least in part by his protected conduct.

*Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016).

Here, it appears that Mr. Webb's complaint could support, ever so slightly, an inference that satisfies the first element. *See Adkins v. Board of Educ.*, 982 F.2d 952, 956 (6th Cir. 1993) ("it is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship . . . The right of association is violated if the action constitutes an 'undue intrusion' by the state into the marriage relationship.")  As to the second element, the Court will proceed with the assumption that Mr. Webb's reassignment, as well as any subsequent actions taken by the defendants, were adverse. *See Sowards v. Loudon County*, 203 F.3d 426, 433 (6th Cir. 2000) ("discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote [are] examples of adverse actions in the employment context") (citation and internal quotations omitted).  Thus, Mr. Webb's First Amendment theory turns on whether he can show a causal connection between the defendants' actions and Mr. Webb's marital relationship with his wife.

In their Motions to Dismiss, the defendants directly challenge Mr. Webb's causal premise.  They argue, in essence, that none of the actions related to Mr. Webb were taken because of his marital relationship.  Rather, Mr. Webb was reassigned and investigated because of his own personal presence in Washington, D.C. on January 6, 2021.  Although this version of the story may actually be the case, the Court, at this juncture, must rely on Mr. Webb's facts and draw all reasonable inferences in his favor.  On the causal front, however, Mr. Webb's pleading leaves quite a bit to be desired.  Aside from the fact that the State Police found out about Mr. Webb's presence in Washington, D.C. because of his wife's social media posts [*see* R. 1 at ¶¶ 44, 46, 58], there is nothing in Mr. Webb's complaint implying that the actions undertaken by the defendants were because of Mr. Webb's marital relationship.  Mr. Webb pleads little, if any, specific conduct by the defendants that would support an inference that the defendants were at all

concerned with his relationship with his wife.  Mr. Webb cannot rest his theory of recovery on threadbare legal conclusions, and the Court is not inclined to draw inferences that are unwarranted.  *See DirecTV, Inc.*, 487 F.3d at 476 (the Court "need not accept as true legal conclusions or unwarranted factual inferences.").  Further still, even assuming for argument's sake that the facts taken together could support a causal inference, Mr. Webb's complaint would still be deficient to overcome constitutional scrutiny.

Because any intrusion on Mr. Webb's intimate relationship was not a "direct and substantial interference," the defendants' actions would only be subject to rational basis review. *See Pleasant View Baptist Church*, 78 F.4th at 302 (explaining that "direct and substantial interference" with intimate association is subject to strict scrutiny, while lesser interferences merely merit rational-basis review).  Rational-basis review is highly deferential and is satisfied so long as a state actor's decision is "rationally related to legitimate government interests." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).  "[A]ny conceivable legitimate governmental interest will do."  *Strehlke v. Grosse Pointe Public Sch. Sys*., 654 F. App'x 713, 719 (6th Cir. 2016) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 624-25 (6th Cir. 2008)).  It is irrelevant whether the government's conceived interest actually underlay the challenged action. *Id*.

The defendants, in their motions to dismiss, certainly put forth a legitimate reason for taking the actions they did as related to Mr. Webb—that Mr. Webb was in Washington, D.C. on a day when rioters stormed the U.S. Capitol building.  Thus, because the defendants offer a rational reason for their actions, the burden shifts back to Mr. Webb to plead facts that plausibly negate "every conceivable basis that might support" each of defendants' reasons for their actions. *Usery v. Turner Elkhorn Mining Co*., 428 U.S. 1, 15 (1976).  Here, even if Mr. Webb's

12

complaint clears the causal hurdle, he points to no alleged facts that would cast doubt upon the defendants' stated reasons for their actions. Again, Mr. Webb attaches his First Amendment claim to nothing more than the fact that the State Police became aware of his presence in Washington, D.C. via his wife's social media. This fact alone is not enough to plausibly negate the defendants' rational basis. For these reasons, the Court concludes that Mr. Webb's § 1983 claim hedged on a violation of his First Amendment right to intimate association fails.

**3**

The final constitutional claim that Mr. Webb makes alleges a violation of his Fourteenth Amendment right to due process. Specifically, Mr. Webb claims that he had a property interest in his employment position as Commander of the Kentucky State Police's Recruitment Branch. The Fourteenth Amendment's Due Process Clause provides that "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.] *Hewitt v. Helms*, 459 U.S. at 472. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth*, 408 U.S. at 577, and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460.

A public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property or liberty interest. *See Loudermill*, 470 U.S. at 538. Such a property interest arises from a "legitimate claim of entitlement to continuing employment." *Roth*, 408 U.S. at 577. Thus, in order to establish due process protection, a "plaintiff must, as a threshold matter, establish that he had a protected property interest in his continued employment entitling him to due process protection." *Blazy v. Jefferson Cty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411-12 (6th Cir. 2011) (citations omitted).

Analysis of state law determines whether an employee possesses a property interest in continued employment. *See Roth*, 408 U.S. at 578 ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits.") Moreover, a "property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir.2004) (citations omitted). In this case, the Court must look to Kentucky law to determine whether Mr. Webb had a legitimate claim of entitlement to his position as Commander of the Kentucky State Police's Recruitment Branch.

Mr. Webb's briefing elucidates that state government employees enjoy a property interest in their positions pursuant to KRS § 18A.095. [R. 27 at 18.] Because he was deprived of notice or a hearing or any other protections granted to state employees by KRS Chapter 18A, Mr. Webb argues that the defendants violated his due process rights as related to his employment position with the Kentucky State Police. Mr. Webb's argument, however, warrants being pulled up

straight out of the starting gate.  Indeed, KRS Chapter 18A does afford certain protections for *certain* state employees—but not all.  KRS Chapter 18A specifically exempts Kentucky State Police troopers from the classified service to which KRS § 18A.095 applies.  Ky. Rev. Stat. Ann. § 18A.115 (West, 2024).  As the defendants correctly point out, Mr. Webb's rights as a Kentucky State Trooper are governed by KRS Chapter 16 and Kentucky State Police policy.  [R. 30 at 5-6; R. 31 at 6]; *see also Kentucky State Police v. Conder*, 447 S.W.3d 189, 190 (Ky. App. 2014) ("Chapter 16 applies to state police employees, whereas Chapter 18A applies to state merit employees.").

KRS Chapter 16 protects officers of the Kentucky State Police from removal, suspension, and reductions in grade or pay.  Ky. Rev. Stat. Ann. § 16.140(1) (West, 2024).  "No officer is entitled to a hearing . . . unless his suspension is for more than twenty (20) days, or his pay reduced more than ten percent (10%)."  Ky. Rev. Stat. Ann. § 16.140(9) (West, 2024).  Further, official Kentucky State Police policy states that "[t]he Commissioner may transfer any Chapter 16 officer from one work assignment to another at any time. The final decision on all transfers shall be the responsibility of the Commissioner."  [*See* R. 15-1.]

In the present case, Mr. Webb's complaint merely alleges that he was transferred from a supervisory position to a position without supervisory responsibilities—not that he was removed, suspended, or reduced in grade or pay.   Moreover, even if the Court was to assume—which it is not—that Mr. Webb's transfer was a reduction in grade, Mr. Webb provides no facts alleging a concurrent ten percent reduction in pay.  Thus, on his own facts, Mr. Webb's procedural due process claim fails for two reasons.  First, his transfer did not deprive him of any property interest afforded by state law, specifically KRS Chapter 16.  Second, he was not entitled to any

15

hearing.  Accordingly, Mr. Webb's § 1983 claim as it relates to a deprivation of procedural due process must also fail.

Because the Court ultimately finds that Mr. Webb's § 1983 claim fails to withstand Rule 12(b)(6) scrutiny, wading into any lengthy discussion on immunity or the statute of limitations is unnecessary and will be foregone.  *See Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2003) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## C

Having disposed of Mr. Webb's federal § 1983 claim, the Court turns next to Mr. Webb's state law claims.  The defendants urge the dismissal of Mr. Webb's claims arising under state law on various grounds.  A district court may, however, "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  Moreover, Mr. Webb evinces his preference that the Court decline to address his state court claims.  [R. 27 at 21-22.]  Where, as here, the Court has dismissed Mr. Webb's federal claim early in the proceedings, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction.  *See Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021), cert. denied, 143 S. Ct. 88, 214 L. Ed. 2d 15 (2022); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").

## III

To be clear, this Court's dismissal does not preclude Mr. Webb from seeking relief for his alleged injuries altogether.  He may, if he so chooses, refile his state court claims in state court—the forum likely more adept at resolving those issues.  For the reasons stated above, however, Mr. Webb's federal claim cannot be a basis for relief.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants La Tasha Buckner's and Crystal Staley's Motion to Dismiss [**R. 24**] is **GRANTED**;

2. Defendants Phillip Burnett, Jr.'s, David Trimble's, Billy Gregory's, Shawna Kincer's, and the Department of State Police's Motion to Dismiss [**R. 25**] is **GRANTED**;

3. Defenant Mary Noble's Motion to Dismiss [**R. 26**] is **GRANTED**; and

4. Plaintiff Michael Webb's Complaint [**R. 1**] and Amended Complaint [**R. 23**] are **DISMISSED**.

This the 26th day of March 2024.

Gregory F. Van Tatenhove
United States District Judge